## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYAN APONTE LUCIANO,** | : | **CIVIL NO. 1:CV-09-01362** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES LINDBERG,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## M E M O R A N D U M

Plaintiff Bryan Aponte Luciano ("Luciano"), an inmate currently confined at the State Correctional Institution in Somerset, Pennsylvania ("SCI-Somerset"), filed this civil rights complaint pursuant to 42 U.S.C. § 1983 on July 15, 2009, as amended on April 14, 2010. (Doc. 38.) In the amended complaint, Luciano alleges an access to the courts claim and three separate excessive use of force claims against several prison officials from his former place of confinement, the State Correctional Institution in Coal Township, Pennsylvania ("SCI-Coal Township").[1]

Before the court is a motion for summary judgment filed on behalf of Defendants. (Doc. 73.) For the reasons set forth below, the motion for summary judgment will be granted in favor of Defendants.

---

[1] The remaining Defendants in this action are SCI-Coal Township's librarian, James Lindberg, Lieutenant D.A. McCoy, Lieutenant J.F. Fago, and Lieutenant Jeffrey Madden.

I.     **Background**

    A.     **Facts**

The following facts are related to Luciano's claims.  The court notes any factual

disputes between the parties by presenting both parties' contentions.

On June 6, 2005, Luciano pleaded guilty to first degree murder in the

Lackawanna County Court of Common Pleas.  (Doc. 76 ¶ 43.)  He was transferred to

SCI-Coal Township on August 31, 2005.  (*Id*. ¶ 30.)  From January 8, 2008 through

October 14, 2008, Luciano was housed in SCI-Coal Township's Restricted Housing

Unit ("RHU").  (*Id*. ¶ 32.)  Luciano filed the instant civil rights action stemming from

alleged incidents occurring during his stay in the RHU.  (*Id*. ¶ 2.)  Remaining are a

denial of access to the courts claim against Defendant Lindberg, and three separate

excessive use of force claims against Defendants McCoy, Madden, and Fago.  (*Id*. ¶

3.)

The Pennsylvania Department of Corrections ("DOC") has three different

grievance or administrative remedy processes which collectively provide an inmate

with a forum to challenge every aspect of confinement.  (*Id*. ¶ 8.)  Those policies are:

(1) the Inmate Discipline Policy, DC-ADM 801; (2) the Inmate Grievance Policy, DC-

ADM 804; and (3) the Administrative Custody Policy, DC-ADM 802.  (*Id*. ¶ 9.)

Within the DC-ADM 804, the DOC has established a three-step inmate grievance

system so that inmates have an avenue to seek resolution to specific problems.  (*Id.* ¶ 19.)  Pursuant to DC-ADM 804, all inmates under the jurisdiction of the DOC shall have access to a formal procedure for the resolution of problems or other issues of concern arising during the course of confinement.  (*Id.* ¶ 20.)  An inmate may file a grievance within fifteen (15) working days after the events upon which the claims are based.  (*Id.*)  RHU inmates are not precluded from filing grievances under DC-ADM 804, related to issues impacting their quality of life, other than the reasons for the RHU confinement.  (*Id.* ¶ 18.)

After the receipt of the initial review decision, an inmate may file an appeal to the Facility Manager within ten (10) working days.  (*Id.* ¶ 21.)  Once an inmate receives the Facility Manager's decision, he may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals within fifteen (15) working days.  (*Id.* ¶ 22.)  If a grievance is determined to be improperly submitted, it is assigned a grievance number and returned to the inmate unprocessed.  (*Id.* ¶ 23.)  An improperly submitted grievance, if resubmitted, must be resubmitted under the same grievance number within five (5) working days.  (*Id.* ¶ 24.)  An appeal to final review cannot be completed unless an inmate complies with all established procedures.  (*Id.* ¶ 25.)

In this case, Kandis Dascani, Assistant to SCI-Coal Township's Superintendent, reviewed the grievance records filed by Luciano from January 8, 2008 to October 14,

2008, and found the following three grievances relevant to the remaining claims.  (*Id.* ¶¶ 26-29, 33.)

Grievance number 236205, filed by Luciano on July 15, 2008, accused Defendant Lindberg, in part, of refusing to make copies which resulted in the Pennsylvania Superior Court closing his case.[2]  (*Id.* ¶ 34.)  According to Defendants, an initial review response was issued denying the grievance, and an appeal was taken to the Superintendent, who upheld the initial response.  (*Id.*)  The final appeal on this grievance was dismissed as untimely and for containing reference to the UCC.  (*Id.*)  Luciano disputes this summary, instead stating that a "correct interpretation of the file is that the grievance was timely filed on July 15, 2008, denied July 25, 2008, appealed July 30, 2008, appeal denied August 7, 2008 and appealed to the third level on August 18, September 9 and September 17, 2008.[3]  (Doc. 82 ¶ 34.)

Grievance number 220052, filed by Luciano on February 28, 2008, accused Defendant McCoy of being nonresponsive to an alleged use of excessive force by

---

[2] The court notes that Luciano's appeal before the Pennsylvania Superior Court was dismissed on May 1, 2008, two months before he filed this grievance.  (*See* Doc. 76 ¶ 48.)

[3] Luciano also states,

> We also believe that a fair inference arising from the handling of this and the other grievances is that the purpose being pursued is to technically default prisoners out of their right to file a lawsuit as opposed to seeking an increased communication and prompt resolution of grievances because the grievances involved in this case clearly show no action taken by prison administrators other than searching for procedural default, which search is memorialized by *pro forma* check off forms used by administrators to memorialize any possible procedural default.

(Doc. 82 ¶ 35.)

other officers.  (Doc. 76 ¶ 35.)  According to Defendants, an initial review response

was issued denying the grievance, and an appeal was taken to the Superintendent, who

likewise denied it as untimely.  (*Id.*)  Luciano disputes this summary, instead stating,

> The grievance was filed on February 28, 2008, denied on March 21,
> 2008, filed "without action" in the Secretary's Office of Inmate
> Grievances based on a failure to appeal to the Facility Manager on May
> 16, 2008,[ ] appealed to the Facility Manager on May 30, 2008 and
> notated that "all these grievances were acted upon by Central Office, final
> review, no further action is needed" by the Facility Manager
> (Superintendent) and then it is clear that further appeals were taken to the
> Secretary's Office of Inmate Grievances on June 3, 2008, filed "without
> action" on June 9, 2008, on June 18, 2008 filed "without action" on July
> 2, 2008, on July 7, 2008 (discussed in Superintendent's memo July 9,
> 2008) and denied in the Secretary's Office for UCC references on an
> undiscerable [sic] date.

(Doc. 82 ¶ 35.)

According to Defendants, there is no record of any grievance being filed by

Luciano relating to Defendant Madden and a use of excessive force on March 26,

2008.  (Doc. 76 ¶ 37.)  Luciano disputes this statement, instead stating,

> The testimony in this case shows that after the assault complained of on
> March 26, 2008, the Plaintiff Luciano was stripped naked, thrown into an
> unsanitary cell with no running water for one month, and deprived of all
> ability to file grievances intentionally by the individuals perpetrating the
> assault.  Moreover, Plaintiff Luciano, immediately upon having the
> capability of filing a grievance, prepared and filed one which was not
> accepted on the basis that it was untimely (leaving no written record).
> The inference being that the grievance was destroyed by the very same
> individuals that perpetrated the assault.  Under these circumstances,
> Plaintiff Luciano did not have access to a grievance procedure and,
> therefore, exhaustion of remedies is not required.

(Doc. 82 ¶ 37) (citations omitted).

5

Grievance number 241268, filed by Luciano on August 20, 2008, accused Defendant Fago and others of excessive force.  (Doc. 76 ¶ 36.)  According to Defendants, an initial review response was issued denying the grievance, and then an appeal was taken to the Superintendent, who upheld the initial response.  (*Id.*)  The final appeal on this grievance was dismissed for containing reference to the UCC. (*Id.*)  Luciano disputes this summary, instead stating, "The record shows a timely grievance, a denial on September 11, 2008 (30 days later), a timely appeal to the Facility Manager on September 14, 2008 (3 days), denial by the Facility Manager on September 17, 2008, a timely appeal on September 23, 2008, and a denial on October 9, 2008, because of reference to the UCC."  (Doc. 82 ¶ 36.)

Additionally, the DOC currently employs Leilani Sears as an Administrator Officer 2 in the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Doc. 76 ¶ 39.)  Officer Sears reviewed the grievance appeal records for those grievances filed by Luciano from January 8, 2008 through October 14, 2008, and determined that he did not properly appeal any grievances filed during this time period through to SOIGA, the final stage of appeal.  (*Id.* ¶ 40.)  Luciano disputes this fact, in part, instead claiming that an effective grievance procedure was not available to him for some of his claims.  (Doc. 82 ¶ 40.)

The court will now set forth the specific material facts with respect to the four claims in Luciano's second amended complaint, again noting any factual disputes between the parties.

### 1.   <u>Access to the Courts Claim</u>

Luciano alleges Defendant Lindberg, SCI-Coal Township's librarian, caused his appeal that was pending in the Pennsylvania Superior Court to be dismissed by refusing to make copies of a request for an extension of a deadline.  (Doc. 76 ¶ 4.)  By way of background, the court notes the following.  Luciano filed a petition for post-conviction collateral relief ("PCRA") following his June 2005 guilty plea in the Lackawanna County Court of Common Pleas.  (*Id*. ¶ 44.)  Thereafter, Luciano's attorney was permitted to withdraw representation.  (*Id*. ¶ 45.)  On June 22, 2007, Luciano's PCRA petition was denied.  (*Id*. ¶ 46.)  Luciano appealed to the Pennsylvania Superior Court.  (*Id*. ¶ 47.)  Luciano's appeal was dismissed by the Superior Court on May 1, 2008, for failure to file a brief.  (*Id*. ¶ 48.)

Before the dismissal, Luciano requested three extensions of time to file a brief, which the Superior Court granted.  (*Id*. ¶ 49.)  Luciano's fourth request for an extension of time was denied by the Superior Court prior to dismissing his appeal.  (*Id*. ¶ 50.)  Luciano was provided with copying services at SCI-Coal Township during the relevant time period, and was able to file four requests for extensions of time.  (*Id*

7

¶¶ 51, 52.)  None of Luciano's requests for extension of time to the Superior Court accuse Defendant Lindberg of hindering his ability to prosecute his appeal.  (*Id*. ¶ 53.)

### 2.   February 18, 2008 Incident

Luciano alleges that on February 18, 2008, Defendant McCoy was present and failed to intervene and stop an assault on Luciano by other corrections officers.  (*Id*. ¶ 5.)  Defendants assert the following background with respect to this incident. Defendant McCoy was a Lieutenant at SCI-Coal Township on February 18, 2008, serving as the RHU Lieutenant on the 6:00 a.m. to 2:00 p.m. shift.  (*Id*. ¶¶ 54, 55.) Defendant McCoy does not recall any usual incident or assault of Luciano on that date and time period.  (*Id*. ¶ 56.)  Further, there is no documentation or recording of any incident on February 18, 2008, as described by Luciano.  (*Id*. ¶ 57.)  The RHU logbook and inmate log for Luciano on February 18, 2008, do not contain any notation of the alleged incident.  (*Id*. ¶ 58.)

In turn, Luciano alleges that on February 18, 2008, he was removed from his cell on the second floor by two officers in order to clean his cell.  (*Id*. ¶ 63.)  He alleges that Defendant McCoy was on the first floor in an office at the time.  (*Id*. ¶ 64.)  Luciano is not certain that Defendant McCoy could hear his call for help.  (*Id*. ¶ 65.)  He alleges that Defendant McCoy left the RHU pod when Luciano was placed in a shower cell, and returned as he was escorted back to his cell.  (*Id*. ¶¶ 66, 67.)  He further alleges that he was pushed, lifted, smashed into a wall and thrown into his cell,

causing swelling in his face and cuts to his arms.  (*Id.* ¶ 68.)  Luciano alleges that at

that time Defendant McCoy moved toward the stairs, and did not participate in the

assault.  (*Id.* ¶¶ 69, 70.)  Luciano alleges that this incident at his cell door lasted ten

(10) seconds.  (*Id.* ¶ 71.)

Luciano had an outside medical appointment on February 19, 2008, that had

been previously scheduled on January 19, 2008.  (*Id.* ¶ 59.)  The record from the

outside medical appointment noted that Luciano complained of some pain from

intermingling or cuffing by the guards.  (*Id.* ¶ 60.)  However, there is no notation of

visible injury to Luciano's face or arms.  (*Id.* ¶ 62.)  Luciano's exam was negative.

(*Id.* ¶ 61.)

Luciano disputes Defendants' material facts, in part, and instead sets forth the

following account.  (*See* Doc. 82 ¶¶ 54-71.)

> The McCoy incident occurred on or about February 18, 2008.  Luciano
> was held in the second tier, Cell 16, when a prisoner in another cell
> flooded his cell and contiguous cells with water.  Luciano was
> handcuffed behind his back, attached to a leash, removed from his cell
> and, from the actions of the guards, became fearful that he was going to
> be injured or killed.  Lt. McCoy was on the cell block within sight and
> hearing range and Luciano called to him asking him to help and to
> control the guards that had leashed him.  As he was being moved by these
> guards, Luciano was yelling to Lt. McCoy.  Luciano saw Lt. McCoy on
> the lower tier and was certain Lt. McCoy knew that Luciano was in the
> process of being assaulted.
>
> Lt. McCoy did not do anything and he and another guard named
> Procoppio laughed while Luciano was being assaulted by Butts and
> another correctional officer.  Butts slammed Luciano against the wall and
> Lt. McCoy saw it.  Lt. McCoy also would have heard it because Luciano

was screaming and calling McCoy's name.  Lt. McCoy would have also
been able to see that when Luciano was transferred from his cell a large
unidentified guard was continually pulling Luciano up in the air with the
leash causing great pain.  Luciano testified Lt. McCoy could see exactly
what was going on.

Luciano requested medical care, he talked to the "Chief Commander," the
Superintendent, everybody he could talk to on all three shifts including
Lt. McCoy.

Luciano was taken to a doctor at Geisinger Clinic for a scheduled visit
the next day and reported his injuries from the encounter with the guards
and told the Geisinger doctor what occurred.

Luciano talked to numerous people to obtain a grievance slip and testified
he filed a grievance.  The record shows that Grievance 220052 was filed
on February 28, 2008 against Defendant McCoy for being unresponsive
to the use of excessive force by other officers.  It was denied by SA
Moyer CO3 on March 21, 2008 (Grievance 215434) and appeal to the
Secretary's Office of Inmate Grievances resulted in a form being
generated on May 16, 2008 designated "file without action" because it
was not appealed to the Facility Manager.  Most importantly, on May 30,
2008 a form appears in the file containing the notation "all these
grievances were acted upon by Central Office, final review, no further
action is needed, signed Supt. 5/30/2008."  This indicates exhaustion and
that no further appeals will be considered.  Another attempt at appeal to
the Superintendent was dated June 3, 2008 and a final appeal to the
Secretary's Office of Inmate Grievances was denied on June 9, 2008,
with the checked off reason being "you have not yet appealed this issue
to the Facility's Manager."  On June 18, 2008, Luciano wrote to the
Secretary's Office of Inmate Grievance and Appeals calling to their
attention that he had received the file back without an action sheet and
indicating that he had appealed to the Superintendent and that he
enclosed a copy of the appeal to their office citing the indication that "all
those grievances were acted upon by the Central Office" by the
Superintendent and asking for a better resolution.  Another "file without
action" checkoff form was returned to Luciano on July 2, 2008 with the
blank checked "you have not yet appealed this issue to the Facility
Manager."  On July 7, 2008, Luciano again attempted to appeal to the
Superintendent for a resolution of this specific grievance and other

grievances and on July 9, 2008 the Superintendent wrote back indicating that that specific grievance was denied as being untimely submitted since the initial response is dated March 21, 2008.

On July 22, 2008, Luciano wrote to the Secretary's Office of Inmate Grievances again complaining about the beatings and a "file without action" checkoff slip with reason K checked states that the correspondence "is being filed without action due to the fact that you included UCC references in your document."

(Doc. 81 at 8-10) (citations omitted).

### 3.   <u>March 26, 2008 Incident</u>

Luciano alleges that on March 26, 2008, officers and/or Defendant Madden were involved in an incident concerning the return of Luciano's food tray, whereupon Luciano was sprayed in the face with OC (pepper) spray and then taken to a holding cell and assaulted.  (Doc. 76 ¶ 6.)  Defendants assert the following background with respect to this incident.  Defendant Madden was RHU Lieutenant at SCI-Coal Township on March 26, 2008.  (*Id*. ¶ 72.)  On that date, Luciano broke a food tray.  (*Id*. ¶ 73.)  Further, Luciano threw an unknown liquid substance at an officer.  (*Id*. ¶ 74.)  As a result, Defendant Madden prepared a team of officers, an extraction team, to remove Luciano from his cell.  (*Id*. ¶ 75.)  At his cell, Luciano refused orders to be cuffed.  (*Id*. ¶ 76.)  Defendant Madden then directed CO Seedor to use OC (pepper) spray two times.  (*Id*. ¶ 77.)  At that point, Luciano allowed himself to be cuffed and transferred to another cell.  (*Id*. ¶ 78.)  While being escorted, Luciano complained that he could not breathe.  (*Id*. ¶ 83.)  However, a nurse noted that he had no difficulty

11

breathing.  (*Id*. ¶ 84.)  This incident was recorded by a video camera.  (*Id*. ¶ 79.)  It

was noted afterwards that Luciano had superficial scratches but no bleeding.  (*Id*. ¶

82.)  Luciano was issued three misconducts related to this incident.  (*Id*. ¶ 85.)

Luciano alleges that Sgt. Ritchey[4] sprayed him four or five times with the OC

(pepper) spray.  (*Id*. ¶ 86.)  However, Defendants assert that Sgt. Ritchey did not

administer the OC (pepper) spray and in fact was not on the extraction team.  (*Id*. ¶¶

80, 81.)  Luciano also alleges that eight or nine officers opened his cell door and

assaulted him, and dragged him on the floor.  (*Id*. ¶ 87.)  Defendants assert that the

video recording does not support Luciano's allegations related to this incident.  (*Id*. ¶

88.)

Luciano disputes Defendants' material facts, in part, and instead sets forth the

following account.  (Doc. 82 ¶¶ 72-88.)

> The incident involving Defendant Madden occurred on March 26, 2008.
> The Plaintiff Luciano appealed to Lt. Madden because a Sgt. Ricci
> apparently had it in for the Plaintiff and was tampering with his food or
> other necessities[ ] and the Plaintiff asked Lt. Madden to intervene and
> protect him from Sgt. Ricci, who Luciano believed intended to eventually
> do serious bodily harm to him.  The Plaintiff was also having an asthma
> attack and the COs put his asthma pump right outside the cell door in an
> apparent taunting maneuver.  The Plaintiff became angry and refused to
> return his food tray.  Lt. Madden and Sgt. Ricci came to Luciano's cell
> again and asked him why he would not return the food tray.  Luciano told
> Lt. Madden that he needed medical treatment and Lt. Madden demanded
> the return of the tray.  Plaintiff Luciano told Lt. Madden he would return
> the tray but Sgt. Ricci stopped the exchange by telling Madden "don't
> take it he has a weapon" causing Lt. Madden to refuse to take the tray.

---

[4] Luciano refers to Sgt. Ritchey as Sgt. Ricci.  (*See, e.g.*, Doc. 81 at 5-7.)

Plaintiff Luciano was then informed that the only way he would get medical treatment was if Lt. Madden and Sgt. Ricci escorted him to some unknown and undisclosed destination.  The Plaintiff Luciano refused to go with Lt. Madden and Sgt. Ricci because he feared that he would be beaten because Sgt. Ricci had threatened his life, destroyed his food, denied him showers, linen and other necessities and Luciano did not trust Sgt. Ricci.

Sgt. Ricci and Lt. Madden left the cell and returned with the SWAT (extraction) team.  The Plaintiff Luciano was willing and offered to return the tray but the tray was now used as an excuse to assault and pepper spray Luciano.  Luciano contends that he did nothing wrong and that the assault by the SWAT (extraction) team and use of pepper spray was really a form of punishment inflicted by using the food tray as an excuse.

After the pepper spray, the SWAT (extraction) team took Luciano to another room, drug him through the hall and eventually placed him in another cell.  Only the extraction itself was recorded with video cameras and Luciano testified that the officers punched him when the cameras were turned off and, in effect, they were "putting on a show" for the cameras.  Luciano was eventually stripped naked; the water was shut off in the new cell he was transferred to; he was not given any medical treatment; he was slammed against the wall receiving injuries (his jaw and his finger were badly hurt); and he continues to have rashes on his body because of the pepper spray.  Luciano requested treatment every day after the incident from numerous prison officials.  His repeated requests for medical treatment were ignored.

Luciano testified that he filed a grievance against Lt. Madden and the others.  He indicated the grievance was late because he was stripped naked and placed in a cell for three weeks to one month with no running water or sanitation and he did not file the grievance until his property was returned and he had the ability to file a grievance.  Plaintiff asked for paper and pencil to file a grievance during the weeks he was locked naked in the unsanitary cells and the guards refused to give it to him.  He attempted to file a grievance but was told it was against policy to file a grievance late and the grievance he prepared was not accepted.[ ]

(Doc. 81 at 5-7) (citations omitted).

### 4.    **August 20, 2008 Incident**

Luciano alleges that on August 20, 2008, after a search of Luciano's cell,

Defendant Fago and other assaulted him while he was handcuffed, slammed his head

against the wall, and bent his arms in a manner that almost broke them.  (Doc. 76 ¶ 7.)

Defendants assert the following background with respect to this incident.  Defendant

Fago was a RHU Lieutenant at SCI-Coal Township on August 20, 2008.  (*Id*. ¶ 89.)

On that date, a CERT team was activated to shake down the cells in the RHU.  (*Id*. ¶

90.)  Luciano was removed from his cell while it was searched.  (*Id*. ¶ 91.)  He was

placed back in his cell upon completion of the search.  (*Id*. ¶ 92.)  At that point,

Luciano refused to comply with an order to place his hands through the wicket so that

his handcuffs could be removed.  (*Id*. ¶ 93.)  As a result, Luciano was controlled by

the use of a tether until the handcuffs could be removed.  (*Id*. ¶ 94.)  Contrary to this

account, Luciano alleges that nine officers, including Defendant Fago, assaulted him,

slammed his head against the door, and almost broke his arms.  (*Id*. ¶ 97.)  He further

alleges that all nine officers pulled on the tether.  (*Id*. ¶ 98.)  After the incident,

Luciano was evaluated for minor abrasions.  (*Id*. ¶ 95.)  The incident occurred at

approximately 12:25 p.m., and part of the RHU pod search was recorded by video.

(*Id*. ¶¶ 99, 100.)  Further, Luciano was issued a misconduct related to this incident.

(*Id*. ¶ 96.)

Luciano disputes Defendants' material facts, in part, and instead sets forth the

following account.  (Doc. 82 ¶¶ 89-100.)

> The Defendant Luciano does not remember the exact date of the Fago
> incident but believes it occurred in August of 2008.  The incident
> occurred when Lt. Fago and a group of other correctional officers (COs)
> did a "shake down" of Luciano's cell.  Plaintiff was stripped naked and
> his legal documents and religious items were strewn around the cell and
> stepped on by the searching officers.  At one point the COs found a
> calendar and took on a celebratory attitude stating that they "found the
> evidence they were searching for."  The calendar was a religious calendar
> that the [Plaintiff] had been using to track various grievances he had been
> filing concerning the unit he was then housed in.  Luciano begged Lt.
> Fago to get involved and protect him from the searching corrections
> officers.  Instead, Lt. Fago mashed the [Plaintiff's] head against the wall.
> The [Plaintiff] was placed in handcuffs, a leash was put on the handcuffs
> and the searching corrections officers (believed to be up to nine
> corrections officers) are alleged to have put the leash through the wicket[1]
>  and engaged in a tug of war attempting to pull Luciano's hands through
> the wicket.  Lt. Fago encouraged this and, according to the Plaintiff's
> testimony, told the officers to continue.  Lt. Fago saw everything and
> participated in the pulling and tugging by the involved officers.  Luciano
> estimates there were nine participants in the overall assault and, while a
> nurse eventually came and took pictures of some of this injuries, he was
> never given medical treatment notwithstanding the fact that he requested
> treatment during all three subsequent shifts.

> Luciano testified at his deposition that he filed a grievance relating to this
> incident.  This is confirmed by the record which shows Grievance
> 241268 filed August 20, 2008 culminating in a final appeal showing
> unquestioned exhaustion of remedies.

(Doc. 81 at 4-5) (citations omitted).

## B.   <u>Procedural History</u>

In his original complaint, Luciano named sixty-six Defendants and alleged that

these Defendants harassed, intimidated, threatened, and assaulted him, as well as,

denied him necessities, access to the courts, and tampered with his mail.  (Doc. 1.)
The court screened the case pursuant to 28 U.S.C. § 1915, found the complaint
insufficient, and ordered Luciano to file an amended complaint.  (*See* Doc. 9.)  On
September 8, 2009, Luciano filed an amended complaint.  (Doc. 11.)  In his amended
complaint, Luciano named fourteen Defendants who were either current or former
employees of the Pennsylvania Department of Corrections ("Corrections
Defendants"), as well as an additional Defendant who was not employed by the
Department of Corrections.

On November 18, 2009, the Corrections Defendants filed a motion to partially
dismiss Luciano's amended complaint.  (Doc. 20.)  By memorandum and order dated
March 25, 2010, the court granted the Corrections Defendants' motion, but permitted
Luciano to amend his complaint and provide additional factual detail as to his claims
against five of the Defendants.  (*See* Doc. 35.)

On April 14, 2010, Luciano filed a second amended complaint.  (Doc. 38.)  In
his second amended complaint, Luciano alleges separate excessive use of force claims
against Defendants J.F. Fago, Jeffrey Madden, and D.A. McCoy.  He also asserts a
denial of access to the courts claim against Defendant Lindberg.  These claims are
presently before the court.  However, in his second amended complaint, Luciano also
alleges two separate conditions of confinement claims against Defendant D.A.

McCoy, and a due process claim against Defendant L.S. Kerns-Barr.  The second amended complaint also asserts a conspiracy claim against all Defendants.[5]

On April 30, 2010, Defendants filed a motion to partially dismiss the second amended complaint.  (Doc. 43.)  By memorandum and order dated November 23, 2010, the court granted Defendants' motion to partially dismiss the second amended complaint.  (Doc. 51.)  Specifically, the court dismissed Defendant Kerns-Barr as a party from this case, and dismissed all claims against her with prejudice.  Further, the court dismissed with prejudice the conspiracy claim against all Defendants.  The court also dismissed with prejudice the conditions of confinement claims against Defendant McCoy.  As a result, the only claims that remain are Luciano's excessive use of force claims against Defendants Fago, Madden, and McCoy contained in paragraphs eight, nine, and the first two sentences of paragraph ten of his second amended complaint, and his denial of access to the courts claim against Defendant Lindberg contained in paragraph eleven.

The court then issued a scheduling order setting the deadlines for completion of discovery and dispositive motions.  (Doc. 54.)  On December 7, 2010, Defendants answered the complaint.  (Doc. 55.)  Subsequently, after receiving a request for the

---

[5] In his second amended complaint, Luciano alleges a claim against a non-Department of Corrections employee, Dr. Ikram.  However, Luciano was unable to identify Dr. Ikram's address in order to effectuate service of the second amended complaint.  As a result, by order dated December 2, 2010, the court dismissed Dr. Ikram as a party in this action without prejudice for failure to prosecute.  (Doc. 53.)

appointment of counsel by Luciano, on December 28, 2010, the court granted

Luciano's request, provided that a member of the pro bono panel of the Middle

District of Pennsylvania Chapter of the Federal Bar Association agreed to volunteer to

represent Luciano. (Doc. 58.)  The order also stayed the scheduling order pending

further order of court. (*Id*.)

On February 7, 2011, the court issued an order directing James J. West, Esquire,

to enter his appearance on behalf of Luciano by the end of March 2011. (Doc. 64.)

The court also directed that upon the entry of appearance of counsel for Luciano, the

stay imposed on December 28, 2010, would be lifted and further case management

deadlines set.  Attorney West entered his appearance on behalf of Luciano on March

23, 2011. (*See* Doc. 64.)  Discovery ensued, and on September 14, 2011, Defendants

filed the instant motion for summary judgment.  Responsive and reply briefings have

been filed, thus the motion for summary judgment is ripe for disposition.


## II.   Standard of Review - Summary Judgment

Summary judgment is proper when "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R.

Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001).

A factual dispute is "material" if it might affect the outcome of the suit under the

applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

## III.   **Discussion**

A plaintiff, in order to state a viable § 1983 claim, must plead two essential

elements: 1) that the conduct complained of was committed by a person acting under

color of state law, and 2) that said conduct deprived the plaintiff of a right, privilege,

or immunity secured by the Constitution and laws of the United States.  *West v.*

*Atkins*, 487 U.S. 42, 48 (1988).  A defendant's conduct must have a close causal

connection to plaintiff's injury in order for § 1983 liability to attach.  *Martinez v.*

*California*, 444 U.S. 277, 285 (1980).[6]  A prerequisite for a viable civil rights claim is

that a defendant directed, or knew of and acquiesced in, the deprivation of a plaintiff's

constitutional rights.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988).

In the instant motion for summary judgment, Defendants argue that the court

should grant summary judgment in their favor because Luciano failed to properly

exhaust his administrative remedies with respect to the remaining claims.  In addition,

Defendants argue that Luciano has failed to establish the access to the courts claim

and the excessive use of force claims.  As exhaustion of administrative remedies is a

threshold issue, the court will address exhaustion with respect to each incident first,

followed by a merits discussion,[7] if necessary.

---

[6] The Court in *Martinez* explained: "Although a § 1983 claim has been described as 'a species of tort liability,' *Imbler v. Pachtman*, 424 U.S. 409, 417 [] [(1976)], it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." *Martinez*, 444 U.S. at 285.

[7] The court will set forth the standard with respect to exhaustion of administrative remedies first, and, should the court find that Luciano has exhausted such remedies with respect to any claim,

A.      **Exhaustion of Administrative Remedies**

Defendants seek summary judgment in their favor based on Luciano's failure to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act of 1995 ("PLRA").  The PLRA requires a prisoner to present his claims through an administrative grievance process before seeking redress in federal court.  The act specifically provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.").  Because an inmate's failure to exhaust under the PLRA is an affirmative defense, the inmate is not required to specially plead or demonstrate exhaustion in her complaint.  *Jones v. Bock*, 549 U.S. 199, 216 (2007).  Failure to exhaust administrative remedies must be pled and proved by the defendants.  *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Under § 1997e(a), "an inmate must exhaust [administrative remedies] irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  Exhaustion means proper

---

will then set forth the applicable standard for a merits review, followed by discussion.

exhaustion, that is, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006). "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones*, 549 U.S. at 204. Failure to substantially comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default."). Additionally, "it is beyond the power . . . of any . . . [court] to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp 2d 884, 894-95 (S.D.N.Y. 1998) (citing *Weinberger v. Salfi*, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis*, 204 F.3d at 71.

The Pennsylvania Department of Corrections ("DOC") has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 Pa. Code § 93.9(a); *see also* www.cor.state.pa.us, DOC Policies, Policy No. DC-ADM 804, Inmate Grievance System. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the

facility's Grievance Coordinator for initial review.  An inmate may then appeal an

adverse decision of the Grievance Coordinator to the Superintendent of the institution,

and can finally appeal to the Secretary of the DOC Office of Inmate Grievances and

Appeals, located in Camp Hill, Pennsylvania.  *See Booth v. Churner*, 206 F.3d 289,

293 n.2 (3d Cir. 2000) (outlining Pennsylvania's grievance review process).

Here, Defendants' motion for summary judgment is based in part on the

assertion that Luciano failed to exhaust his available administrative remedies under

DC-ADM 804 for all four relevant incidents.  The court will discuss each incident in

turn.

### 1.      Access to the Courts Claim

Defendants claim that Luciano failed to exhaust his available administrative

remedies with respect to his access to the courts claim.  Specifically, Defendants argue

that the subject of Luciano's July 15, 2008 grievance was an incident occurring on

July 9, 2008 involving his request for copies and notarization of certain documents,

and that this grievance included only a passing reference to the claim set forth in this

case.  (*See* Doc. 75 at 11.)  Further, the final appeal of this grievance was dismissed as

untimely and for containing a reference to the UCC.  As a result, Defendants argue,

Luciano failed to properly exhaust his administrative remedies with respect to the

instant claim against Defendant Lindberg.  Luciano counters this argument, claiming

that because he had to file a request to staff member informing the

Superintendent/Facility Manager that he did not receive a response to his appeal, any later appeal to the Secretary's Office of Inmate Grievances would have been untimely, and therefore the court should deem this claim exhausted.

The record in this case reveals the following.  On July 15, 2008, Luciano filed a grievance complaining that Defendant Lindberg had failed to make copies and notarize certain documents for him on July 9, 2008.  (Doc. 77 at 52, Ex. G.)  In that grievance, Luciano adds that Defendant Lindberg "has cost me [my constitutional rights] by refusing to make my legal copies, that the court closed my case, this is being going on a while ago."  (*Id*.)  A grievance officer denied this grievance on July 25, 2008, making specific references to the July 9, 2008 incident which is not at issue in this case.  (*Id*. at 53.)  On July 30, 2008, Luciano filed an appeal with the Superintendent/Facility Manager, stating, *inter alia*, "I want a better resolution, or to receive compensation on this matter since he cost that the Superior Court closed my criminal case!"  (*Id*. at 54.)  The Superintendent/Facility Manager denied the appeal on August 7, 2008, referencing the July 9, 2008 incident as follows: "In review of this at the second level, [Defendant Lindberg] informs this staff member that the documents you wanted him to notarize clearly did not require being notarized.  When he informed you of this, you, once again, got an attitude.  He even offered to run copies for you of said documentation."  (*Id*. at 55.)  On August 13, 2008, Luciano filed an inmate request to staff member, informing the Superintendent/Facility

Manager that he had not yet received a response to his appeal. (*Id*. at 56.)  The

Superintendent/Facility Manager responded on August 14, 2008, informing Luciano

that he already responded, and attached a copy of that response.  (*Id*.)

   At this point, Luciano claims that he thereafter appealed to the Secretary's

Office of Inmate Grievances on August 18, September 9 and September 17, 2008.

(Doc. 82 ¶ 34.)  In his brief, he cites to the government's Exhibit G containing

Luciano's relevant grievance and appeals.  (*See* Doc. 81 at 16.)  However, the record

does not contain appeals filed by Luciano on August 18, 2008 or September 17, 2008.

However, the record does contain the following filings.  On September 9, 2008,

Luciano filed an appeal to the Secretary's Office of Inmate Grievances, seeking a

"better, good resolution" for his grievance, and threatening to sue the Office for

$100,000,000 if it failed to "do something."  (Doc. 77 at 57, Ex. G.)  The Office

denied his appeal on September 30, 2008.  (*Id*. at 58.)  In that decision, the Office

stated, "As your appeal to this Office dated September 9, 2008, contained UCC

references, your appeal of Grievance No. 236205 is dismissed.  Additionally, your

appeal to final review was untimely as the Superintendent's response was dated

August 7, 2008 and your appeal to final review was submitted well beyond the time

frame provided in DC-ADM 804."  (*Id*.)

   As set forth above, once an inmate receives the Facility Manager's decision, he

may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals

within fifteen (15) working days.  (Doc. 76 ¶ 22.)  In this case, the

Superintendent/Facility Manager's response to Luciano's grievance is dated August 7,

2008.  Therefore, Luciano had fifteen (15) working days, or until August 28, 2008, to

file his final appeal to the Secretary's Office of Inmate Grievances.  Even taking into

account Luciano's claim that he did not receive the Facility Manager's response, as set

forth in an inmate request to staff dated August 13, 2008, the record reflects that the

Facility Manager provided Luciano with another copy of the response on August 14,

2008.  There is nothing in the record showing that Luciano subsequently claimed he

did not receive this response.  As a result, Luciano still had from August 14, 2008 to

August 28, 2008 to file his final appeal to the Secretary's Office of Inmate

Grievances.  Luciano did not file that appeal until September 9, 2008.  Therefore, it

was properly dismissed as untimely on September 30, 2008.  Because Luciano has

failed to comply with the procedural requirements of the grievance system, his claim

here is procedurally defaulted.  *See Spruill*, 372 F.3d at 227-32.  Further, as it is plain

that Luciano had access to the prison grievance system throughout the relevant time

period here, the court will not excuse his noncompliance with the exhaustion

requirement.  The access to the courts claim will therefore be dismissed for failure to

exhaust administrative remedies and Defendant Lindberg will be dismissed as a party

in this action.

**2.      February 18, 2008 Incident**

Defendants claim that Luciano failed to exhaust his available administrative remedies with respect to the alleged incident of February 18, 2008, involving Defendant McCoy.  Specifically, Defendants argue that Luciano's grievance against Defendant McCoy was dismissed at the second level as untimely, and no appeal was taken to the final level.  As a result, Defendants argue, Luciano failed to properly exhaust his administrative remedies with respect to the instant claim against Defendant McCoy.  Luciano counters this argument, claiming that because a notation on the Facility Manager's denial of appeal stated, "all these grievances were acted upon by Central Office, final review, no further action is needed," Luciano properly and fully exhausted his administrative remedies.

The record in this case reveals the following.  On February 28, 2008, Luciano filed a grievance complaining that on February 18, 2008, three corrections officers came to his cell and forcibly removed him to a shower cell, threatening him and assaulting him by pulling on a tether attached to him in order to apply handcuffs. (Doc. 77 at 60-61, Ex. H.)  In that grievance, Luciano's only reference to Defendant McCoy is as follows: "[A sergeant] refuse to address the issue, our [sic] call the Lt. McCoy for me."  (*Id*.)  A grievance officer denied the grievance on March 21, 2008, stating the following:

> Inmate Luciano, you claim you were threatened when you were placed in the shower on 2-18-08.  I interviewed Sgt. Procopio and Co. Butts and they told me they simply placed you in the shower so your cell could be cleaned after a flood on Pod 3.  Lt. McCoy was on duty that day and you

27

> made no complaints to him nor did you say anything to me when I
> returned from Holiday.  If you have problems with staff you need to
> bring it to somebody's attention right away prior to filing a grievance.  I
> found nothing to substantiate your claim.  Grievance denied.

(*Id*. at 62.)  Luciano did not appeal this decision to the Superintendent/Facility

Manager.  (*See id*. at 60-72.)  As a result, on May 16, 2008, the Secretary's Office of

Inmate Grievances issued a form "File Without Action," which informed Luciano of

the following:

> You have not yet appealed this issue to the Facility Manager.  Final
> review will not be granted until you do so.  Upon receiving a response
> from the Facility Manager at the respective facility, you may once again
> submit a timely written appeal to this Office for final review.  This
> response does not grant you a right to an appeal if it would otherwise
> have been untimely to pursue that appeal to the Superintendent.

(*Id*. at 63.)  Consequently, on May 30, 2008, Luciano filed an appeal to

Superintendent/Facility Manager, asking for a "better, good resolution."  (*Id*. at 64.)

The Superintendent/Facility Manager, who was at the time Joseph Piazza, responded

on the same day, stating, "All these grievances were acted upon by Central Office,

final review.  No further action is needed."[8]  (*Id*.)  Luciano appealed this decision to

the Secretary's Office of Inmate Grievances on June 3, 2008, again requesting a

"better resolution."  (*Id*. at 65.)  On June 9, 2008, the Office denied his appeal as

untimely, noting, "According to our records, you have yet to appeal any of these

grievances to the Superintendent."  (*Id*. at 66.)  Luciano responded to the Office on

---

[8] Luciano appeared to be appealing four grievances in this one appeal, only one of which is
relevant here.  (*See* Doc. 77 at 64.)

June 18, 2008, stating that he had received the earlier response indicating that his

grievance had been acted upon by the Central Office, by final review, and that no

further action is needed, but requested again a "better resolution/better action." (*Id.* at

67.)  On July 2, 2008, the Office responded as follows:

> According to our records and as you were previously informed by this
> office, you have not appealed any of these grievances to the
> Superintendent.  This was also confirmed by institutional staff.  It appears
> that former Superintendent Piazza may have erroneously responded to
> your inquiry to him dated May 30, 2008, regarding a better resolution on
> the grievances by indicating that final review had been conducted.
> However, as you were informed by the Facility Grievance Coordinator, if
> you were not happy with an initial review response, your next step was to
> appeal to the Superintendent.  Per DC-ADM 804, you have ten working
> days from the date of the initial review response to appeal to the
> Superintendent.  Initial review responses/rejections on the above
> grievances range from March 21, 2008 to April 21, 2008.  Therefore,
> attempts to appeal to the Superintendent at this time would more than
> likely be considered untimely.

(*Id.* at 68.)  Thereafter, on July 7, 2008, Luciano filed an appeal to the

Superintendent/Facility Manager asking again for resolution on his grievances.  (*Id.* at

69.)  On July 9, 2008, the Superintendent responded, informing Luciano, *inter alia*,

that his "[i]intial grievance response from Lt. Moyer is dated March 21, 2008.  Your

appeal of this grievance is denied as being untimely submitted. . . . DC-ADM 804

states that appeals must be submitted within 10 working days from the date of the

initial response." (*Id.* at 70.)  Luciano then appealed to the Secretary's Office of

Inmate Grievances on July 22, 2008, again asking for resolution on his grievances.

(*Id*. at 71.)  The Office responded on July 25, 2008,[9] stating,

> Your correspondence to this office, regarding your unhappiness with grievance responses, is being filed without action due to the fact that you included UCC references on your document.  Please be advised that any grievance related documentation sent to this office which includes such references will not be addressed, but will be filed without action.

(*Id*. at 72.)

As set forth above, after the receipt of the initial review decision, an inmate may file an appeal to the Superintendent/Facility Manager within ten (10) working days. (Doc. 76 ¶ 21.)  In this case, Luciano received a denial of his initial grievance relating to the alleged February 18, 2008 incident from the grievance officer on March 21, 2008.  (Doc. 77 at 62.)  He did not appeal this decision to the Superintendent/Facility Manager.  (*See id*. at 60-72.)  He did, however, subsequently receive a "File Without Action" form on May 16, 2008, from the Secretary's Office of Inmate Grievances informing him, for informational purposes, that the Office never received an appeal of his grievance relating to this incident.  (*Id*. at 63.)  It is at this point that Luciano returned to the appeal process for his grievance.  He filed an appeal to the Superintendent/Facility Manager on May 30, 2008.  (*Id*. at 64.)  However, clearly this filing was untimely, as Luciano had ten working days from March 21, 2008, or until

---

[9] The date on this response is not very clear on the photocopy provided to the court, but it is noted from what can be read of the date that it is more than likely July 25, 2008.  (*See* Doc. 77 at 72.)

April 4, 2008, to make such a filing and he failed to do so.  Consequently, the fact that

the Superintendent/Facility Manager's May 30, 2008 response included the language,

"All these grievances were acted upon by Central Office, final review.  No further

action is needed," (*id*.), cannot excuse exhaustion because regardless of the

Superintendent/Facility Manager's comments on May 30, 2008, the fact remains that

Luciano's later appeal was untimely and consequently denied for that reason.  Again,

Luciano did not timely appeal the March 21, 2008 decision to the

Superintendent/Facility Manager, and as a result, his claim here is procedurally

defaulted.  Therefore, Luciano's claim with respect to the alleged February 18, 2008

incident will be dismissed for failure to exhaust administrative remedies and

Defendant McCoy will be dismissed as a party in this action.

### 3.   March 26, 2008 Incident

Defendants claim that Luciano failed to exhaust his available administrative

remedies with respect to the alleged incident of March 26, 2008, involving Defendant

Madden.  Specifically, Defendants argue that Luciano failed to file any grievance

whatsoever against Defendant Madden related to this incident.  Luciano counters this

argument, claiming that administrative remedies were not available to him by virtue of

his placement in a punishment cell after the incident for one month in which he had no

access to materials with which to file a grievance.

The record in this case reveals the following.  Initially, it is noted that there is no grievance filed by Luciano regarding this incident in the record.  However, through a review of Luciano's deposition testimony and other evidence, the court sets forth the following with respect to this incident.  In his deposition, Luciano asserted that on March 26, 2008, eight or nine officers, including Defendant Madden, were involved in a cell extraction whereupon Luciano was sprayed with OC (pepper) spray in the face four to five times by a Sergeant Ritchey, assaulted and then dragged to a holding cell where he was again sprayed with the OC (pepper) spray and assaulted.  (Doc. 77-1 at 85-98; Doc. 77-2 at 1-12, Ex. K.)  More specifically, Luciano testified that he was sprayed with the OC (pepper) by Sergeant Ritchey, then jumped by all the officers in his cell, assaulted, and dragged to a holding cell.  (Doc. 77-1 at 97-99.)  He also testified that when they got to the holding cell, he was sprayed again.  (Doc. 77-2 at 1.)  In addition, he stated that the incident was being videotaped, but once they reached the holding cell, Defendant Madden ordered that any videotaping of the incident be stopped.  (*Id*.)  The videotaping stopped, Luciano testified, and he was physically assaulted further by these eight or nine officers in the holding cell.  (*Id*.)  He then recounted that after this assault, he was removed to a new cell, where Defendant Madden ordered his drinking and toilet water shut off.  (*Id*. at 4-5.)  Further, his mattress was removed and he was stripped naked and left in that cell for up to a month without the mattress, toilet paper, soap, a shower, or access to his

32

property, including his legal mail.  (*Id*. at 5.)  He stated that when he got his writing materials back after that month he filed a grievance, but was told it was untimely.  (*Id*. at 11.)

Defendants claim that Luciano failed to exhaust his administrative remedies relating to this alleged March 26, 2008 incident involving Defendant Madden.  (Doc. 75 at 11.)  Luciano, however, counters that he was unable to timely file grievances relating to this incident because prison officials refused to provide him with any paper or writing implements by which to do so for at least thirty days following the alleged incident.  (Doc. 81 at 7.)  He further alleges that when he later tried to file a grievance, he was told it was against policy to file a grievance late, so his grievance was not accepted.  (*Id*.)

Courts have held that affirmative misconduct by prison officials - designed to impede or prevent an inmate's attempts to exhaust - may render administrative remedies unavailable.  *See Todd v. Benning*, 173 F. App'x 980, 982 (3d Cir. 2006) (expressing approval of Eighth Circuit's holding in *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system").  Examples of affirmative misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, *see, e.g.*, *Harcum v. Shaffer*, No. 06-5326, 2007 WL 4167161, at *5 (E.D. Pa. Nov. 21,

2007) (finding administrative remedies unavailable where prison officials threatened

plaintiff with "opposition to his future prerelease application, parole, or outside work

detail if he did not withdraw his grievance"), (2) refusing to provide appropriate

grievance forms in response to inmate inquiries, *see, e.g.*, *Mitchell v. Horn*, 318 F.3d

523, 529 (3d Cir. 2003), (3) advising an inmate that his or her situation does not

require a grievance, *see, e.g.*, *Brown*, 312 F.3d at 111-12 (finding that administrative

remedies were unavailable to a plaintiff who had been advised by prison officials that

he must wait until the end of the prison's investigation before filing a grievance), and

(4) failing to file or respond to a prisoner's grievances, *see, e.g.*, *Camp*, 219 F.3d at

280-81 (finding that administrative remedies were unavailable where prison officials

refused to file plaintiff's grievances regarding their coworkers).

     As stated above, Defendants argue here that Luciano failed to exhaust his

administrative remedies because the record shows that he failed to file any grievance

whatsoever related to this alleged March 26, 2008 incident.  However, Luciano

counters that because he was placed in a cell for approximately a month without a

pencil or paper to write a grievance, he was not able to timely file a grievance.

Further, a later grievance he attempted to file was not accepted.  Viewing the facts in a

light most favorable to Luciano, the court finds that Luciano's allegations of

misconduct by Defendants set forth a compelling reason to excuse compliance with

the exhaustion requirement for his claims relating to the alleged March 26, 2008 incident involving Defendant Madden.

Turning to a merits review of this claim, the court notes the following with respect to the record evidence. After Luciano broke his food tray and threw food and an unknown liquid at staff, including a Sergeant Ritchey, earlier in the day, a decision was made to remove him from his cell by use of an extraction team for failing to comply with orders. (Doc. 78, Ex. W; *see also* Doc. 77-3 at 77, 87, Ex. N.) Additionally, Defendant Madden testified at his deposition that because Luciano had broken his tray, a search of his cell and his person was necessary to ensure that Luciano was not in possession of a weapon, presumably one formed with the broken tray. (Doc. 77-3 at 35-38, 40.) In addition, videotape evidence of this incident reveals the following. An extraction team consisting of seven corrections officers, including Defendant Madden, was assembled outside of the RHU cell block. (Doc. 78.) As Defendant Madden testified at his deposition, Sergeant Ritchey was not part of the extraction team because he was the officer assaulted by Luciano earlier in the day. (Doc. 77-3 at 99.) When the team reached Luciano's cell, Luciano was asked to comply with orders and cuff up, but he refused. (Doc. 78.) As a result, a member of the extraction team sprayed Luciano with OC (pepper) spray twice.[10] (*Id.*; *see also* Doc. 77-3 at 100.) Luciano then agreed to comply with the order and was cuffed and

---

[10] Luciano does not allege that Sergeant Ritchey or any other corrections officer used OC (pepper) spray on this day prior to this incident. (*See* Doc. 38.)

removed from his cell to an RHU search room.  (Doc. 78.)  The videotape evidence

shows that Luciano was not dragged to this cell.  (*Id*.)  Once at the cell, a member of

the extraction team directed Luciano to agree to a strip search.  (*Id*.)  The videotape

evidence shows that no one sprayed Luciano with OC (pepper) spray or otherwise

physically assaulted him while in this cell.  (*Id*.)  Luciano agreed to the strip search

and was then placed in a "blueberry suit,"[11] and removed to another cell back on the

RHU cell block.  (*Id*.)  Importantly, there does not appear to be any break or editing in

the videotape.  (Doc. 78.)

    In order for a prisoner to state an Eighth Amendment claim for excessive use of

force by a prison official, he must establish that the force was not applied in a good-

faith effort to maintain or restore discipline, but that it was maliciously and

sadistically used to cause harm.  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  "In

determining whether a correctional officer has used excessive force in violation of the

Eighth Amendment, courts look to several factors including: (1) 'the need for the

application of force;' (2) 'the relationship between the need and the amount of force

that was used;' (3) 'the extent of injury inflicted;' (4) 'the extent of the threat to the

safety of staff and inmates, as reasonably perceived by responsible officials on the

basis of the facts known to them;' and (5) 'any efforts made to temper the severity of a

forceful response.'"  *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

---

[11] As Defendant Madden testified at his deposition, a "blueberry suit" is a anti-suicide smock and blanket.  (Doc. 77-3 at 101.)

36

*Whitley v. Albers*, 475 U.S. 312, 321 (1986)).  Further, an Eighth Amendment claim includes an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  The objective component is "contextual and responsive to 'contemporary standards of decency.'"  *Hudson*, 503 U.S. at 8 (quoting *Estelle v. McGuire*, 429 U.S. 97, 103 (1976)).  The subjective component "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson*, 501 U.S. at 297).  "What is necessary to establish an 'unnecessary and wanton infliction of pain,' . . . varies according to the nature of the alleged constitutional violation."  *Hudson*, 503 U.S. at 5 (quoting *Whitley*, 475 U.S. at 320).

The prisoner need not show significant injury to state an excessive use of force claim.  *Hudson*, 503 U.S. at 8, 10.  However, "[t]hat is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.  The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de mimimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id*. at 9-10 (citations omitted).

Moreover, in assessing a claim of cruel and unusual punishment, a court must bear in mind that "a prison's internal security is peculiarly a matter [for] the discretion of prison administrators." *Whitley*, 475 U.S. at 321 (quoting *Rhodes*, 452 U.S. at 349 n.14)).  Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* at 321-22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).  As a general rule, judges should not second guess decisions made by prison administrators faced with disturbances or other emergencies affecting prison security.  *Id.* at 322.

Here, the record demonstrates that the extraction team did not, at any point, attempt to maliciously or sadistically punish or injure Luciano.  Luciano has not submitted any evidence to contradict this record, which establishes that, in light of Luciano's failure to comply with direct orders to cuff up in order to be removed from his cell, force was used only as a last resort, and the amount used was both "necessary and the minimum amount needed" to accomplish the task of safely moving Luciano to another cell in order to search his cell and person for weapons.  *See Picozzi v. Haulderman*, Civ. No. 4:08-CV-0926, 2011 WL 830331, at *5 (M.D. Pa. Mar. 3, 2011) (plaintiff failed to establish an excessive use of force claim where record establishes that the force used, pepper spray, was necessary and the minimum amount needed to get the plaintiff to an area where she could be medically treated).  *See also*

*Soto v. Dickey*, 744 F.2d 1260, 1270 (4th Cir. 1984) ("The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary . . . to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment," even if the inmate is handcuffed).  The actions of the extraction team, including Defendant Madden, were a proper and good faith use of force "to maintain or restore discipline" and do not constitute a wanton infliction of pain. *Whitley*, 475 U.S. at 320-21*; see also Bryant v. Vessell*, Civ. No. 09-5337, 2011 WL 2652137, at *5 (D. N.J. July 6, 2011) (concluding prison officials used a proper amount of force during a cell extraction after viewing it on videotape).  As a result, Luciano has failed to establish a claim of excessive use of force against Defendant Madden and this Defendant will be dismissed as a party in this action.

### 4.    August 20, 2008 Incident

Defendants claim that Luciano failed to exhaust his available administrative remedies with respect to the alleged incident of August 20, 2008, involving Defendant Fago.  Specifically, Defendants argue that because Luciano's grievance against Defendant Fago was dismissed for failure to follow the rules by containing reference to the UCC, he failed to properly exhaust his administrative remedies with respect to this claim.  Luciano counters this argument, claiming even though his appeal was denied for technical reasons, that denial does not change the fact that he exhausted his administrative remedies with respect to this claim.

The record in this case reveals the following.  On August 20, 2008, Luciano filed a grievance complaining that on that date while several corrections officers were performing a shakedown of his cell, Defendant Fago and other officers threatened and assaulted him after confiscating a religious calendar.  (Doc. 77-1 at 2-3, Ex. I.)  A grievance officer denied this grievance on September 11, 2008, stating, *inter alia*,

> First the confiscated material you mentioned, the calendars with staff members names on them, were returned to you by this grievance officer.
>
> I also interviewed you on 9/9/08 in reference to the allegations you made that staff have been threatening you and telling you they are going to kill you.  I attempted to get you to explain these allegations and all you wanted to discuss was a time cut from the Restricted Housing Unit.
>
> * * *
>
> I asked you to explain the grievance allegations about staff abuse and you stated that you considered the staff not seeing you when you yelled to them abuse.  You further stated that you attempted to get the Officer's attention when they were videotaping an inmate being removed from his cell and that they refused to talk to you.  I again attempted to explain the procedures in the Restricted Housing Unit and I continued to discuss with you the allegations you made and you went right back to saying you wanted a time cut.
>
> Based on the above, I find no basis for your grievance.  All staff acted professionally at all times and your request for monetary compensation and a transfer are denied.

(*Id.* at 4.)  On September 14, 2008, Luciano filed an appeal with the Superintendent/Facility Manager, stating that the grievance officer had lied in his initial review response, requesting a transfer out of the RHU, and threatening to file a

40

lawsuit for $100,000,000. (*Id.* at 5.)  The Superintendent/Facility Manager denied the

appeal on September 17, 2008, concluding as follows,

> It appears from my review of Captain Miller's [grievance officer]
> response that you are more interested in receiving a time cut from the
> RHU than you were in discussing the matters you brought forth in your
> grievance.  In order for an appropriate investigation to be conducted you
> need to provide the requested information to the staff member doing the
> investigation, in this case, Captain Miller.
>
> I feel that Captain Miller gave you a thorough review with what
> information you made available to him.  Taking all information into
> consideration I find no grounds for your appeal.  Your appeal is therefore
> denied.
>
> It is your individual decision if you want to pursue litigation in this
> matter.

(*Id.* at 77.)  On September 23, 2008, Luciano appealed to the Secretary's Office of

Inmate Grievances, asserting that he has been in compliance of all the grievance

procedures and requesting resolution of his grievance.  (*Id.* at 78.)  The Office denied

the appeal on procedural grounds on October 9, 2008, finding, "As your appeal to this

Office dated September 23, 2008, contained UCC references, your appeal of

Grievance No. 241268 is dismissed." (*Id.* at 79.)  There is nothing in the record

indicating that Luciano resubmitted his appeal with the procedural defect corrected,

nor does Luciano assert that he did so.

As set forth above, the PLRA requires a prisoner to present his claims through

an administrative grievance process before seeking redress in federal court.  Further,

the PLRA also requires "proper exhaustion," meaning that a prisoner must complete

the administrative review process in accordance with the applicable procedural rules of that grievance system.  *Woodford v. Ngo*, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . .").  Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal."  *Id*. at 83; *see also Spruill*, 372 F.3d at 228-29 (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [. . .] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

In this case, Defendants contend that Luciano failed to exhaust his administrative remedies with respect to this claim.  In support of this contention, Defendants have submitted the declaration of Leilani Sears, an Administrative Officer II with the Secretary's Office of Inmate Grievances, who declares, in pertinent part, as follows:

> 9.  I have reviewed the grievance appeals records for those grievances filed by Bryan Aponte Luciano, GF-5619, from January 8, 2008 through October 14, 2008, and have determined that inmate Luciano, did not properly appeal any grievances filed during this time period through to the final stage, which is the final appeal to the SOIGA.

* * *

> 12.  The final appeal on grievance number 241268 [regarding the alleged August 20, 2008 incident] was dismissed for containing references to the UCC.

(Doc. 77 at 39-40, Ex. D.)

In his response, Luciano states, "[t]he fact that the final appeal has rationale C checked off and was apparently denied for technical reasons, i.e., reference to the UCC somewhere in the pleading, does not change the fact that Plaintiff Luciano exhausted his administrative remedies." (Doc. 81 at 14.)  This argument fails as it is a misstatement of the law.  Luciano's final appeal with respect to this claim was, in fact, dismissed due to his references to the UCC, a procedural defect.  (*See* Doc. 77-1 at 8.) He did not attempt to correct his procedural defect by resubmitting an appeal; rather, he simply filed in federal court.  Thus, the claims in the grievance were, in fact, procedurally defaulted.  *See Woodford*, 548 U.S. at 83 (concluding that the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal").  *See also Spencer v. C/O Fries*, No. 06-132, 2008 WL 2275532, at *7 n.5 (W.D. Pa. May 30, 2008) (claims in a grievance are procedurally defaulted by plaintiff's failure to include required documentation in his final appeal). Accordingly, Luciano's claim with respect to the alleged August 20, 2008 incident is not properly before this court and must be dismissed.  Defendant Fago will be dismissed as a party in this action.

**IV.**     <u>**Conclusion**</u>

For the reasons set forth herein, the motion for summary judgment will be granted in favor of Defendants with respect to all of Luciano's claims.

An appropriate order will issue.

s/Sylvia H. Rambo
United States District Judge

Dated:  May 10, 2012.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRYAN APONTE LUCIANO,** | : | **CIVIL NO. 1:CV-09-01362** |
| | : | |
| **Plaintiff** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES LINDBERG,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

For the reasons set forth in the accompanying memorandum, **IT IS HEREBY**

**ORDERED THAT:**

1) The motion for summary judgment (Doc. 73) is **GRANTED** in favor of

Defendants.

2) The Clerk of Court is directed to **ENTER** judgment in favor of Defendants

and against Plaintiff.

3) The Clerk of Court is further directed to **CLOSE** this case.

    s/Sylvia H. Rambo        
United States District Judge

Dated: May 10, 2012.